```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
 2

 3     UNITED STATES OF AMERICA,         )
                                         )
 4                 Plaintiff             )
                                         )
 5           -VS-                        ) Criminal No. 21-10153-PBS
                                         ) Pages 1 - 15
 6     STATE STREET CORPORATION,         )
                                         )
 7                 Defendant             )

 8
                       STATUS CONFERENCE VIA VIDEO
 9

10              BEFORE THE HONORABLE PATTI B. SARIS
                    UNITED STATES DISTRICT JUDGE
11

12
     A P P E A R A N C E S:
13
         JUSTIN D. O'CONNELL, ESQ., Assistant United States
14   Attorney, Office of the United States Attorney,
     1 Courthouse Way, Room 9200, Boston, Massachusetts, 02210,
15   for the Plaintiff.

16       WILLIAM H. PAINE, ESQ. and ROBERT D. KEEFE, ESQ.,
     Wilmer Hale LLP, 60 State Street, Boston, Massachusetts, 02109,
17   for the Defendant.

18                                      United States District Court
                                        1 Courthouse Way
19                                      Boston, Massachusetts  02210
                                        June 10, 2021, 9:44 a.m.
20

21

22
                          LEE A. MARZILLI
23                     OFFICIAL COURT REPORTER
                     United States District Court
24                   1 Courthouse Way, Room 7200
                         Boston, MA  02210
25                      leemarz@aol.com
```

|   |   |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE CLERK:  The Court calls Criminal Action 21-10153, |
| 3 | United States v. State Street.  Could counsel please identify |
| 4 | themselves. |
| 5 | MR. O'CONNELL:  Good morning, your Honor.  Justin |
| 6 | O'Connell for the government. |
| 7 | MR. PAINE:  Bill Paine and Bob Keefe for State Street. |
| 8 | THE COURT:  Thank you.  All right, so let me just say |
| 9 | I've read the information, but I must admit I don't know that |
| 10 | I've ever had a deferred action prosecution before, and I am |
| 11 | not a hundred percent sure whether I'm supposed to schedule |
| 12 | this for a plea or whether there's some other approach I'm |
| 13 | supposed to take. |
| 14 | MR. O'CONNELL:  So, your Honor, I think that I might |
| 15 | be able to help you with that.  I think the standard process |
| 16 | that occurs in DPAs is that essentially the Court holds the |
| 17 | case in abeyance for the period of the DPA to allow the |
| 18 | defendant to show that they are compliant with the terms of the |
| 19 | DPA, and then, upon that time period elapsing, then we would |
| 20 | have a conference.  We would report to you that the, you know, |
| 21 | defendant in this instance had every expectation that they |
| 22 | would have abided by the terms and that we would dismiss the |
| 23 | case.  But there's a procedure under the Speedy Trial Act for |
| 24 | this.  It's 3161(h)(2), and essentially what that does is, most |
| 25 | courts, what they end up doing is, they exclude the time period |

```
 1   that's under the DPA, and then we would come back and report
 2   it.  There are provisions within the agreement for an early
 3   termination.
 4             THE COURT:  Well, I haven't even got the agreement.
 5             MR. O'CONNELL:  The agreement is an attachment to the
 6   information.
 7             THE COURT:  Oh, I see.  So I just hadn't seen that.
 8             MR. O'CONNELL:  It's on the docket.  It's
 9   Document 2-1.
10             THE COURT:  Well, let me just start from basics.  How
11   long do you anticipate me keeping this on my docket with no
12   action?
13             MR. O'CONNELL:  So it's two years.  It's 24 months
14   is -- it can be extended and it could actually terminate early,
15   but the contemplated time period is two years.
16             THE COURT:  And I essentially administratively stay
17   the thing for the two years?
18             MR. O'CONNELL:  Exactly.  That's what most courts do,
19   your Honor.
20             THE COURT:  Well, this is a rare animal in this neck
21   of the woods.
22             MR. O'CONNELL:  Yes, that is true, your Honor.
23             THE COURT:  I don't remember ever getting one before.
24   Has any one been done before in this district?
25             MR. O'CONNELL:  Actually, there has been one with
```

1  State Street as well, and I know my defense colleagues know
2  more about that than I, but it's before Judge Talwani right
3  now, and it's getting towards the end of that period.
4         THE COURT:  Well, why do they get two DPAs?  Are they
5  completely different allegations?
6         MR. O'CONNELL:  It's different.  It's different
7  conduct, your Honor, and we go through principles to decide,
8  you know, whether we should indict or not.  One of those
9  factors is, do you have previous actions against you?  But,
10 also, in this instance in particular, they self-reported,
11 voluntarily repaid, and were very cooperative with the
12 investigation and remain cooperative with the investigation.
13        THE COURT:  When you say repaid, repaid --
14        MR. O'CONNELL:  Repaid the victims in full with
15 interest, even kind of before we reached this resolution here,
16 in fact, many of them well in advance of reaching the
17 resolution here.
18        THE COURT:  Well, I notice it went for a long period
19 of time, so it reached back all through the alleged period?
20        MR. O'CONNELL:  Yes, your Honor, and I'll let
21 Mr. Paine speak.  He has more information on the repayments,
22 but that's my understanding.
23        THE COURT:  And what about these individuals, the
24 Coconspirator 1 through 8?
25        MR. O'CONNELL:  Coconspirators 1 through 8, I mean, as

1  it's contemplated in the DPA, the government's investigation is
2  ongoing, so no action has been taken against the coconspirators.
3              THE COURT:  And there's no bar against going after
4  them?
5              MR. O'CONNELL:  I think it depends.  I would say, no,
6  there isn't.  I'm sure their attorneys would probably say there
7  is, depending upon statute of limitations because --
8              THE COURT:  But no bar from the DPA?
9              MR. O'CONNELL:  Oh, no, no, no, no.  In fact, State
10 Street is, under the terms of the DPA, required to assist the
11 government with its continuing investigation.
12             THE COURT:  Well, is there an ongoing class action or
13 a whistleblower suit?
14             MR. O'CONNELL:  There's no whistleblower -- I'll let
15 Mr. Paine answer it.
16             MR. PAINE:  So there's a class action brought by ERISA
17 participants on behalf of ERISA plans that's being resolved
18 before Judge Wolf.
19             THE COURT:  So this is being spread out among three
20 judges at this point?
21             MR. O'CONNELL:  Well, just to be clear, the
22 Judge Talwani action is not related to this, although it's the
23 same defendant.
24             THE COURT:  And how do we know -- do you have a
25 monitor?  How do you want whether they've been compliant?

1           MR. O'CONNELL:  There is a monitor.  Under the terms
2      of the agreement, State Street is appointing a monitor.  I
3      don't think they're formally appointed at this point, but I
4      believe they will be very --
5           THE COURT:  Well, who's it going to be?
6           MR. PAINE:  It's likely to be Marty Murphy at
7      Foley Hoag.
8           THE COURT:  Sure, I know Mr. Murphy.  And will he be
9      filing a report with the Court?
10          MR. O'CONNELL:  That's not contemplated under the
11     terms of the agreement, your Honor.  The report would be filed
12     with the government and not --
13          THE COURT:  Well, the thing that bugs me a little,
14     just saying, am I just sort of like a rubber-stamp?  I --
15          MR. O'CONNELL:  No.
16          THE COURT:  I don't know why you did it this way.  I
17     feel as if I have -- usually -- I've taken pleas from
18     corporations before, for sure, but usually at least the monitor
19     reports at the end to the court, so I don't know why I should
20     agree to this.  I think there should be a public report by the
21     monitor.  I trust Mr. Murphy.  I mean, he's a good guy.
22          MR. O'CONNELL:  As do we, your Honor.  I think I will
23     point you to a couple of cases that would maybe illuminate this
24     for you.  And I think, you know, I understand if there was an
25     actual charge against the corporation that you would take the

1  plea from the corporation, but the decision as to whether to
2  charge the corporation or enter into something like this is
3  something that we follow -- internally we call the Phillips
4  factors, but externally they're called the corporation
5  principles --
6           THE COURT:  Well, what would be the opposition to
7  having the monitor's report publicly filed?
8           MR. O'CONNELL:  Well, I think it's because it's not
9  contemplated by the terms of the DPA.  There is confidential
10 information within there that they would be sharing.  But I
11 would just ask your Honor to take a look at a couple of cases.
12          THE COURT:  Well, I don't want to take them down right
13 now.  Why don't you send me a little brief on it.  The thing
14 that's of concern to me, once you file it in court, you're
15 asking me to do something, you know?  I'm the judge in charge,
16 but I'm not because you contemplate that I am just essentially
17 going to rubber-stamp -- are you even going to be filing a
18 motion to dismiss?
19          MR. O'CONNELL:  At the end of the period, assuming
20 that State Street abides by its terms -- and I have no reason
21 to believe that it wouldn't -- we would file a motion that
22 would dismiss the case.
23          THE COURT:  But where's the public scrutiny of all
24 this if you don't at least get the monitor's report?  Why did
25 you file anything?

1           MR. O'CONNELL:  Can I --
2           THE COURT:  Yes, I'd be happy to.  I mean, I've never
3  seen one of these before.  I've heard about them.
4           MR. PAINE:  Can I make a suggestion for just a little
5  bit of a rewind?
6           THE COURT:  Yes.
7           MR. PAINE:  So for better or worse, this is the way
8  deferred prosecution agreements typically get processed, and
9  the fundamental idea is, is that rather than indicting and
10 pursuing a charge, the case will be held in abeyance while
11 things happen.  One of the things -- and the things that have
12 happened are set forth in the deferred prosecution agreement,
13 including cooperation, having the monitor, et cetera.  You
14 know, the one before Judge Talwani, what happened is that it
15 was filed, and it's sitting on the docket, and we've checked in
16 with her from time to time about what our timing is and when we
17 expect that the monitorship for that one is going to end and
18 therefore when it can be closed out.  But the reality is that
19 we're not asking you to do anything.  We're essentially using
20 the docket as, you know, public notice that this decision to
21 move forward in this way has happened, with the hope and
22 expectation on my client's part that in either one or two
23 years --
24          THE COURT:  Well, is Judge Talwani having the
25 monitor's report filed?

1       MR. PAINE:  No.

2       MR. O'CONNELL:  No, your Honor.

3       THE COURT:  So what are the status reports?

4       MR. PAINE:  So basically when it got -- so that was
5  supposed to be a three-year monitorship, but it got hung up by
6  the pandemic, so we're not quite done.  So around the time when
7  she was expecting the thing to be dismissed, she asked us, you
8  know, "Are you going to be done?"  And we basically said, "No.
9  The monitorship got slowed down by the pandemic, so it's going
10 to take a little bit more time."  So she said "Fine."

11      THE COURT:  Well, let me ask you this:  Around the
12 country, are the monitor reports typically filed?

13      MR. PAINE:  No.

14      THE COURT:  Well, then how do I know -- when you move
15 to dismiss, you're asking me to do something, and you're asking
16 me to exclude time.  How do I know that it's been -- in other
17 words, frankly, State Street has gotten a second bite of an
18 apple here; and I don't know that that's true for each and
19 every executive officer, I don't know what's happening there,
20 but I think there should be some shame or owning up or
21 something public.

22      MR. PAINE:  Your Honor, if you look at the -- when you
23 get a chance to look at the deferred prosecution agreement,
24 you're going to see that after -- you know, sort of the
25 monitor's reports are in the nature of suggestions as to how

1   compliance activity could be improved, and so you have -- and
2   so the reports are long, and they're a lot of inside baseball.
3   At the end of the process, the monitor reaches a conclusion
4   about whether he thinks that the compliance program is
5   appropriately effective.
6          THE COURT:  Do I get the bottom line?
7          MR. PAINE:  Sure.  I mean, we could file something.  I
8   don't think it would be helpful to you.  I mean, I could --
9   it's like a 60-page report full of details about stuff.
10         THE COURT:  No, I don't need all that.  What I want to
11  know is what -- here's my problem:  I once had a case involving
12  ExxonMobil, and come to find out that it was a serial offender
13  in the environmental area, but because the Department of
14  Justice did so many different lawsuits and it was all under the
15  radar screen kind of thing --
16         THE CLERK:  Judge, I'm sorry to interrupt.  I got a
17  phone call from somebody from the press, and they had trouble
18  getting in, and I just let them in, so I just wanted everybody
19  to know that.
20         THE COURT:  That's fine.  I was worried about that
21  actually.
22         THE CLERK:  Yes, I'm worried too.
23         THE COURT:  So basically what we're discussing is
24  whether or not the monitor's report should be public, and what
25  I think I'll order is, at the end of the day, that the bottom

1       line be reported before I dismiss this case in two years.
2                MR. PAINE:  That's fine, your Honor.
3                THE COURT:  I think the concern with these deferred
4       prosecution agreements is that there's no public -- it's not
5       open to the public as to exactly what the monitor found or what
6       the background of this is, so that going across the country,
7       there's no way to look it up.
8                MR. O'CONNELL:  And I understand your concerns, your
9       Honor.  I think, from the government's perspective, that's one
10      of the reasons why we do it the way we do it, is to file the
11      documents in court so people can see the conduct, see why the
12      government --
13               THE COURT:  And I think that's wise rather than a
14      non-prosecution agreement.  I'm just simply saying, once you
15      involve me, I'm going to want to know when there's a motion to
16      dismiss.
17               MR. O'CONNELL:  Your Honor, I understand, from the
18      government's perspective, we have no problem with that.  And
19      we, frankly, wouldn't -- I mean, I'm speaking for myself for
20      the government -- we wouldn't be dismissing the charges, and we
21      would be pursuing the information if State Street did not abide
22      by the terms of the agreement and did not meet the standard set
23      forth in the DPA.
24               THE COURT:  I understand that.  It's just typically,
25      if you file something in court, the Court wants to be able to

1  be comfortable.
2          MR. O'CONNELL:  I understand, yes.
3          THE COURT:  You're asking for the blessing of the
4  Court at the end of the day, right, in two years?  And so
5  you've got to give me something.
6          MR. PAINE:  So, your Honor, there isn't any difficulty
7  at the end of the day putting together some short submission,
8  including the monitor's conclusion.
9          THE COURT:  Yes, Mr. Murphy I'm sure will do a good
10 job.  I know him.  I know his work, if he's the one.
11         MR. PAINE:  It makes sense for him to be so.  The
12 paperwork is not done, but that likely will be what happens.
13         THE COURT:  Okay, that sounds fine.  So you do not
14 want me to schedule a plea.  That only happens if --
15         MR. PAINE:  Correct.
16         THE COURT:  And the monitor will report to you if
17 there's not good compliance?
18         MR. O'CONNELL:  That's right, yes, your Honor.  The
19 monitor reports to the government, reports to myself and the
20 head of my unit here.  And we are constantly in contact with
21 State Street and the monitor throughout the two-year period to
22 make sure the standards are being met and that they haven't
23 breached any of the terms of the agreement.
24         THE COURT:  And if there's a finding of a breach, you
25 report to me, right?

1      MR. O'CONNELL: Yes. We would at that point pursue
2 the information and move forward with the criminal case against
3 the bank, and we would notify you of that.
4      THE COURT: And you'll notify me at the end of the day
5 if there were any breaches?
6      MR. O'CONNELL: We would do that, yes, your Honor.
7      THE COURT: So, you know, I'll look at that at the
8 end. All right, well, I think -- is there anything else right
9 now that needs to be discussed? You don't want me to bless
10 this at all at this point? I only adopt it at the end of this
11 process?
12      MR. O'CONNELL: That's right, your Honor. The only
13 thing that we would ask is that you exclude the time period up
14 until -- if you want to have a status conference earlier than
15 the two years, the government is okay with that.
16      THE COURT: Yes, why don't we do that, Maryellen.
17 Like, we'll have a status conference in a year once the monitor
18 has been involved and to make sure there's been compliance and
19 that sort of thing because, as I pointed out before, it is the
20 second case, so --
21      THE CLERK: Judge, can you just repeat that. I was on
22 mute. What did you say?
23      THE COURT: Just set up a status conference in a year,
24 like next June, May, June.
25      THE CLERK: I'll just have to come up with a date.

```
 1              THE COURT:  Meanwhile, I exclude all time under the
 2   Speedy Trial Act until the end of the two-year mark, but it's
 3   probably premature at this point to -- so that would be two
 4   years from when?
 5              MR. O'CONNELL:  Two years from the date of the filing,
 6   I believe, your Honor.  It would be May 13, so May 13 of 2023.
 7              THE COURT:  All right.
 8              THE CLERK:  Okay, so we could do it -- you want a
 9   status.  I'll exclude the time till May 13, 2023?
10              THE COURT:  Yes.
11              THE CLERK:  Okay.  And then you want a status of June,
12   2022.  How about June 10?
13              THE COURT:  That is fine, and it will be monitoring
14   the compliance protocols.
15              THE CLERK:  Okay, and exclude all time, okay.
16              THE COURT:  Okay, does that sound --
17              THE CLERK:  There will be a record of this, since I
18   know Miguel just called me and there were other people who
19   signed up who obviously couldn't get in, but --
20              THE COURT:  I'll order a transcript of this that will
21   be put on the record.
22              THE CLERK:  Right.
23              THE COURT:  Thank you, all right.
24              MR. O'CONNELL:  Thank you, your Honor.
25              THE COURT:  All right, thanks.  Bye-bye.
```

```
 1            MR. KEEFE:  Thank you.
 2            (Adjourned, 10:01 a.m.)
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

```
UNITED STATES DISTRICT COURT )
DISTRICT OF MASSACHUSETTS    ) ss.
CITY OF BOSTON               )
```

       I, Lee A. Marzilli, Official Federal Court Reporter, do hereby certify that the foregoing transcript, Pages 1 through 15 inclusive, was recorded by me stenographically at the time and place aforesaid in Criminal No. 21-10153-PBS, United States of America v. State Street Corporation, and thereafter by me reduced to typewriting and is a true and accurate record of the proceedings.

       Dated this 10th day of June, 2021.


/s/ Lee A. Marzilli
_____
LEE A. MARZILLI, CRR
OFFICIAL COURT REPORTER